UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| EDUARDO JOSE ALVES, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) |
| | )   2:26-cv-00318-SDN |
| DERRICK STAMPER, | ) |
| *Chief Patrol Agent,* | ) |
| *Houlton Sector, U.S. Border Patrol,* | ) |
| et al., | ) |
| | ) |
| Respondents. | ) |

**<u>ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS</u>**

On June 20, 2026, Petitioner Eduardo Jose Alves filed a verified petition for a writ of habeas corpus under 28 U.S.C. § 2241 and a motion for a temporary restraining order. ECF Nos. 1, 3. Petitioner seeks, among other remedies, a writ of habeas corpus ordering his immediate release and a declaratory order that his detention is unlawful because he should be detained, if at all, subject to 8 U.S.C. § 1226(a). ECF No. 1 at 10–11. Immediately following the filing of the petition, at 1:55 p.m. on June 20, 2026, the Court issued an emergency order staying Petitioner's transfer from the District of Maine for 72 hours. ECF No. 4 ("Emergency Order"). At 3:00 p.m. that day, ICE transferred Mr. Alves to Plymouth, Massachusetts, despite the Court's order. The next day, the Government filed a motion to amend the Emergency Order, seeking to authorize Mr. Alves's continued detention in Massachusetts. On June 23, 2026, the Court held oral argument on the petition and on the Government's motion to amend the Emergency Order.

1

## BACKGROUND

The following facts derive from the verified petition and counsels' uncontested representations at the June 23, 2026, hearing. Mr. Alves is a noncitizen who entered the country on a valid tourist visa on July 21, 2024, and subsequently filed an affirmative asylum application with U.S. Citizenship and Immigration Services. ECF No. 1 at 2. He has no criminal history. *Id*. On June 18, 2026, U.S. Immigration & Customs Enforcement ("ICE") arrived at Mr. Alves's residence in Lewiston, Maine, while both he and his wife were away. The agents asked his 15-year-old daughter to let them into the residence and searched the entire home.[1] They did not encounter Mr. Alves at that time. Two days later, on June 20, 2026, around 9:00 a.m., ICE returned to Mr. Alves's residence, arrested him, and transported him to the ICE Scarborough Field Office in Scarborough, Maine. *Id*. at 2. In his petition, Mr. Alves states that ICE officers at the field office told him "transportation is being arranged" imminently to remove him from Maine. *Id*.

The following day, on June 21, 2026, the Government filed a motion seeking to amend the Emergency Order and informed the Court that the U.S. Attorney's Office for the District of Maine received notice of the petition's filing and the Emergency Order at 2:04 p.m. ECF No. 5 at 2. Government's counsel avers, however, that counsel did not see the email notification of the petition and Order, and therefore did not receive actual notice of the filings, until approximately 5:20 p.m. that evening. See *id*. Upon receiving the

---

[1] The record does not establish whether ICE possessed a valid warrant authorizing entry into the Alves residence on June 18, 2026, or whether Mr. Alves's minor daughter—whom counsel described as "terrified"—had legal authority to consent to the search. *See Georgia v. Randolph*, 547 U.S. 103, 112 (2006) ("[T]here will be instances in which even a person clearly belonging on premises as an occupant may lack any perceived authority to consent; a child of eight might well be considered to have the power to consent to the police crossing the threshold into that part of the house where any caller . . . might well be admitted, but no one would reasonably expect such a child to be in a position to authorize anyone to rummage through his parents' bedroom." (quotation modified)). If accurate, the Court is troubled a Government agency would subject a child not even old enough to drive to such tactics.

filings, counsel reached out to ICE, at which point ICE informed them it had transferred Mr. Alves to Plymouth County Correctional Center ("PCCC") in Plymouth, Massachusetts, around 3:00 p.m. that same day. *Id*. Mr. Alves remains in ICE custody at PCCC in Massachusetts. *Id*. The Government's motion to amend the Emergency Order urges the Court to modify the Emergency Order to permit Respondents to continue to detain Petitioner at PCCC. *Id*.

Mr. Alves responded in opposition to the Government's motion to amend, arguing that detention in Massachusetts imposes an undue hardship, deprives him of meaningful access to counsel, and violates his constitutional rights. *See* ECF No. 8. He further argues Respondents willfully violated a court order and the Court should either transfer him back to Maine or order his unconditional release.

On June 22, 2026, the Court issued a show cause order requiring the Government to explain why Mr. Alves's detention is lawful. ECF No. 9. In its response, the Government concedes that 8 U.S.C. § 1226 applies to Mr. Alves and that an upcoming bond hearing is scheduled before an immigration judge on June 29, 2026. ECF No. 10 at 2. The Government supplied a copy of an I-200 administrative warrant authorizing Mr. Alves's arrest. ECF No. 10-1. The warrant is dated June 20, 2026, the day of his arrest, but does not specify the time of issuance. *See id*. The Government also provided a notice of custody determination wherein the Department of Homeland Security determined he should be detained pending a final administrative determination in his removal case, although it does not state the basis for that determination. ECF No. 10-2. This notice is dated June 20, 2026, at 11:11 a.m. *See id*. Relying on these documents and the already-scheduled bond hearing, the Government argues Mr. Alves's detention is lawful under section 1226 and his petition should be denied. ECF No. 10 at 2. The Government further asserts it did

not willfully violate the Emergency Order and that, to the extent Mr. Alves raises a conditions-of-confinement argument about his placement at PCCC, that argument cannot be raised in a civil immigration habeas petition. ECF No. 12 at 3–5. The Government did not otherwise offer any evidence to contradict Petitioner's claims that the conditions at PCCC are inadequate or that Mr. Alves lacks adequate access to counsel.

On June 23, 2026, the Court held oral argument on Mr. Alves's petition and the Government's motion to amend the Emergency Order. ECF No. 13. Petitioner's counsel argued no evidence in the record supports the conclusion that the I-200 arrest warrant was issued before his actual arrest, and that any arrest without a warrant is unlawful. Petitioner's counsel also reiterated that Mr. Alves's placement at PCCC interferes with his access to counsel and requested the Court order Petitioner released or returned to Maine. Government's counsel reaffirmed its position that Petitioner's arrest was valid and maintained any transfer out of District in violation of the Court's Emergency Order was inadvertent and should not be a basis for Court action.

## ANALYSIS

The habeas statute directs federal courts to "dispose of the matter as law and justice require." 28 U.S.C. § 2243. The particular circumstances of this case, considered together, compel the conclusion that release is the appropriate remedy at this juncture.

The most immediate concern is Mr. Alves's transfer to PCCC in Massachusetts in direct violation of this Court's Emergency Order disallowing transfer out of the District. The Court accepts the Government's representation as to how the transfer occurred and finds the violation was not willful. But the Court will not allow inadvertence to serve as an all-purpose excuse: the Government bears an unwavering obligation to ensure compliance with Court orders, and its failure to do so has real consequences for a real

4

person. Mr. Alves now sits detained out of District in violation of a Court order, without his glasses, receiving paperwork in English-—his second language—with a bond hearing approaching. These are not abstract procedural concerns. They are the direct and foreseeable result of the Government's failure to comply with this Court's Order.

The Court notes Government counsel's presentation at the hearing did not assist its position. Following the Government's violation of this Court's Emergency Order, the Court directed the parties to appear and expressly ordered that "the Government should be prepared to discuss its protocols for ensuring Agency compliance with Emergency Court Orders." ECF No. 11. Rather than address that question, Government counsel proposed that the Court issue recommendations to the United States Attorney's Office for its consideration as to how future compliance might be achieved. The Court finds this response—tendered after a Court Order had already been violated—to be inadequate. It reflects a failure to appreciate the gravity of the situation and did nothing to advance the Government's case for continued detention.

Compounding the issue is the fact that ICE has no appropriate facilities in Maine to which Mr. Alves could reasonably be returned. The Government has acknowledged as much. *See* ECF No. 5 at 2 ("There are no beds or showers at the Scarborough facility at which Petitioner was temporarily detained before transfer, and there are no other appropriate facilities for housing Petitioner while he is in ICE custody."). The Government's actions—even if inadvertent—leave Mr. Alves, and therefore the Court, to choose between two constitutionally untenable situations: he can remain at PCCC, out of District and in violation of a Court order, or he can be returned to Maine and placed in a facility without basic amenities. Neither option is acceptable.

Detention at PCCC will also deprive Mr. Alves of meaningful access to counsel at a critical juncture. A detainee has a statutory right to select his own counsel. *See* 8 U.S.C. § 1362 ("In any removal proceedings before an immigration judge . . . the person concerned shall have the privilege of being represented (at no expense to the Government) by such counsel . . . as he shall choose."). The First Circuit has described this right as an "integral part" of due process. *Zeru v. Gonzales*, 503 F.3d 59, 72 (1st Cir. 2007). Courts in this District and Circuit have recognized that transfer to an out-of-district facility can itself constitute a due process violation where it substantially impairs a petitioner's ability to prepare for an upcoming bond hearing. *See Sintuj v. Stamper*, No. 26-CV-00027, 2026 WL 232313, at *5–6 (D. Me. Jan. 28, 2026) (finding that the burden imposed on petitioner and local counsel to prepare for a bond hearing while detained out of state "raises grave concerns as to his due process right to access [] counsel"); *Rodrigues v. Brackett*, 822 F. Supp. 3d 255, 257 (D.N.H. 2026) ("[T]ransfer would substantially interfere with petitioner's access to counsel and undermine her ability to meaningfully litigate her habeas petition and bond hearing."). That concern is acute here, where a bond hearing is imminent and Mr. Alves's Maine-based counsel cannot reasonably prepare while he remains in Massachusetts.

The lawfulness of Mr. Alves's underlying arrest is also in question, and the Court notes that this issue does not favor the Government. The Immigration and Nationality Act and its implementing regulations generally require that an immigration arrest be made pursuant to a warrant. *See* 8 U.S.C. § 1226; 8 C.F.R. § 287.8(c)(2)(ii). A warrantless arrest is permissible only where the officer has individualized probable cause to believe both that the individual is present in violation of immigration law and that he is "likely to escape before a warrant can be obtained." 8 U.S.C. § 1357(a)(2). The "reason to believe"

6

standard under section 1357(a)(2) is the equivalent of the constitutional requirement of probable cause. *Morales v. Chadbourne*, 793 F.3d 208, 216 (1st Cir. 2015); *see also Tejeda-Mata v. Immigr. Naturalization Serv.*, 626 F.2d 721, 725 (9th Cir. 1980). Together, these standards mean that an officer may know with certainty that someone is present unlawfully and still lack authority to arrest without a warrant or an individualized determination that the individual is likely to flee. *See, e.g.*, *M-J-M-A- v. Hermosillo*, 822 F. Supp. 3d 1147, 1172 (D. Or. 2026). Even if a warrant may issue after the fact of arrest, *see Makuiza v. Wesling*, No. 26-CV-000044, 2026 WL 252400, at *3 (D. Me. Jan. 30, 2026), the record here contains no evidence that an arrest warrant was issued before Mr. Alves was taken into custody, and no evidence that ICE made any individualized determination that he was likely to flee. So it appears Petitioner has a point: the initial arrest may have been made in violation of the statute, which would render any subsequent detention independently unlawful. *See Chogllo Chafla v. Scott*, 804 F. Supp. 3d 247, 264 (D. Me. 2025) ("Issuance of a warrant is a necessary condition to justify discretionary detention under section 1226(a). . . . [I]t follows that absent a warrant a noncitizen may not be arrested and detained under section 1226(a).").

In any event, the Court need not resolve the arrest warrant question to grant relief. The grounds addressed above are independently sufficient: the Government violated this Court's Emergency Order, there are no adequate detention facilities in Maine to which Mr. Alves could be returned, and his continued detention at PCCC substantially impairs his right to counsel at a critical moment.

Taken together, these circumstances establish that Mr. Alves's continued detention is unlawful. Habeas petitions are, at their core, "a remedy for unlawful executive detention," *Munaf v. Geren*, 553 U.S. 674, 693 (2008), and the remedy for such detention

"is, of course, release," *id*. The Court therefore concludes that Mr. Alves's immediate release is appropriate and that his petition must be granted. To the extent the Government is concerned about flight risk, it may seek appropriate conditions of release. *See* 8 C.F.R. § 236.1(c)(8).

## CONCLUSION

Accordingly, the Court **GRANTS** the Petitioner's habeas petition, ECF No. 1, and **ORDERS** the Government to release Petitioner from PCCC by 7:00 p.m. on June 23, 2026. Petitioner's motion for a temporary restraining order is **MOOT**. ECF No. 3.

The Government is **ENJOINED** from denying Petitioner a bond hearing on the basis that 8 U.S.C. § 1225(b)(2) applies to Petitioner. The Government is further **ENJOINED** from redetaining Petitioner while his bond hearing is pending. The Government is **ORDERED** to file a status report within 30 days of the June 29, 2026, bond hearing detailing whether the Petitioner has been granted bond, the amount of that bond, and, if denied, the reasons for that denial. The Court **DENIES** the Government's motion to amend the Emergency Order. ECF No. 5.

**SO ORDERED.**

Dated this 23rd day of June, 2026.

/s/ Stacey D. Neumann
**UNITED STATES DISTRICT JUDGE**